United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY TORLUCCI,

       Plaintiff,

  v.

VANCE NORUM, et al.,

       Defendants.

_____/

No. C 08-4124 SBA (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS; AND DENYING
PLAINTIFF'S PENDING MOTIONS**

(Docket nos. 94, 105, 108, 120, 141)

**INTRODUCTION**

    Plaintiff, a state prisoner currently incarcerated in Kern Valley State Prison (KVSP), filed a pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations at Salinas Valley State Prison (SVSP), where he was formerly incarcerated, against the following Defendants: former Secretary of the California Department of Corrections and Rehabilitation (CDCR) Ruth Rushen; SVSP Physicians G. Gauch; Vance Norum; B. Hedrick; R. Diaz and R. Sid; and SVSP Registered Nurse Denise Evelsizor.  Plaintiff alleges that Defendants were deliberately indifferent to his serious medical and mental health needs as well as his safety needs.  Plaintiff seeks monetary damages and injunctive relief.  He also requests for a preliminary injunction.

    Before the Court are Plaintiff's motion for summary judgment, and his motion for an extension of time to file his reply to Defendants' opposition to his motion for summary judgment.

    Also before the Court is Defendants' motion to dismiss and motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  That motion is fully briefed.

    For the reasons discussed below, the Court GRANTS Defendants' motion for judgment on the pleadings and DENIES Plaintiff's pending motions.

**BACKGROUND**

**I.**    **Factual Background**

    Plaintiff's operative complaint was filed on October 30, 2008,[1] and, as mentioned above, the

---

[1]  In an Order dated December 9, 2010, the Court held that Plaintiff's October 30, 2008 complaint (docket no. 37) is the operative complaint in this action.  Therefore, in this Order, the Court cites to this document when it refers to Plaintiff's allegations from the complaint.

events leading to his claims occurred while he was incarcerated at SVSP.

In an Order dated December 8, 2010, the Court reviewed the operative complaint and determined that Plaintiff's allegation that he "suffers from 'Hep[atitis]-C III and TMJ and Tourette's Syndrome' as well as mental illnesses including 'agoraphobia and social phobia,' supports an inference that he has serious medical and mental health needs." (Dec. 8, 2010 Order at 4.)

In 2000, Plaintiff alleges he received "single cell status for [his] Tourette's Syndrome and specific phobia of eating." (Compl. at 5.) At the time the complaint was filed in 2008, Plaintiffs allegedly had been housed at SVSP for ten years, had spent eight years in a single cell, and "never had a cellie for more than a day, couple [of] days, few days, a week or 2 maybe 3, etc." (Id. at 5-6.) Plaintiff claims that he requires "permanent single cell status" in order to treat "both psychiatric and medical concerns, which pose a life and death situation to [him] when and if double celled or in a dormatory [sic] setting." (Id. at 3.) However, Plaintiff alleges that "[e]ven with single cell status, [his] mental and physical health deteriorated, resulting in numerous suicide attempts, [and] suicide precaution measures . . . ." (Id. at 4.) On July 20, 2007, while single-celled, Plaintiff attempted to commit suicide by slitting his wrists. (Id. at 6, 23.)

On March 10, 2008, he was prescribed the drug, Serax. (Id. at 7.) Plaintiff claims that Serax:

> [a]lleviets [sic] the anxiety as it is a antianxiety medication . . . [and] also relieves [his] depression for which he was dystthemic [sic] for 5 years. The Serax also helps 'control' Tourettes! The only thing it does'nt [sic] do is get rid of the irrational fears & unreasonable but real belief my life is in danger due to my phobia(s).

(Id.) However, Plaintiff alleges that Defendants SVSP Physician Sid and SVSP Registered Nurse Evelsizor deliberately participated in "cutting off" Serax and prescribed "antiinflamatoreis [sic]" which could "induce bleeding." (Id., Ex. 7 at 14.)[2] Plaintiff claims that Defendants Sid and Evelsizor "interfered with [his] (high risk) medical treatment directly." (Pl.'s Opp'n, Part 1 at 48.)[3]

---

[2] It is unclear from Plaintiff's operative complaint when exactly Defendants Sid and Evelsizor ordered Plaintiff's Serax prescription treatment to be terminated.

[3] The Court notes that the exhibits attached to Plaintiff's opposition have not been authenticated. However, because Plaintiff's complaint is unorganized and, at times, indecipherable, the Court relies on these exhibits only as a means of clarifying the factual background relating to his claims.

Plaintiff further alleges that Defendants Sid and Evelsizor "failed to respond to numerous complaints of physical pain and mental anguish."  (Id.)

As an inmate with Hepatitis C, Plaintiff was scheduled to receive a treatment regime involving two drugs, Interferon and Pegasys.  (Compl. at 10.)  On January 10, 2008 and March 21, 2008, Plaintiff was examined by Dr. Scherer, a "high risk" doctor, in preparation for his Hepatitis C treatment.  (Id., Ex. 4 at 15.)  On March 24, 2008, Plaintiff received a chrono indicating that he was given "psych clearance for Hepatitis C" treatment.  (Id., Ex. 4 at 16.)  On March 26, 2008, the Interdisciplinary Treatment Team evaluated Plaintiff and opined that an Interferon/Pegasys regime could "exacerbate [his] psychiatric condition."  (Id., Ex. 4 at 15.)  Also on March 26, 2008, Defendant SVSP Psychiatrist Norum approved the chrono authorizing psychiatric clearance for Plaintiff's Hepatitis C treatment.  (Id., Ex. 4 at 16.)

On July 1, 2008, Dr. Scherer's Progress Note indicated that Plaintiff signed and consented to the Hepatitis C treatment, and that the treatment would begin pending a liver biopsy.  (Id., Ex. 6 at 4.)  Plaintiff claims that he consented to the Hepatitis C treatment based on his belief that his single cell status and Serax treatment would continue.  (Id., Ex. 4 at 18.)

On August 21, 2008, Defendant SVSP Senior Psychologist Gauch approved Plaintiff for double cell status.  (Id., Ex. 4 at 23.)  However, Plaintiff claims that he suffered greatly from being double-celled because his phobias prevented him from "the functions of daily living, eating, drinking, using the toilet, going as far as brushing teeth and showering (when double celled I/M's are required to shower with their cellies on lockdowns or in the hole)."  (Id. at 6.)

On August 28, 2008, Plaintiff's Hepatitis C treatment contract was approved and executed by Dr. Scherer.  (Id., Ex. 4 at 18.)

Plaintiff alleges that he believed his prospective Hepatitis C treatment required that he retain single cell status and continue his Serax treatment, given that (1) Pegasys "is brutal to body & mind," (2) Serax "[a]lleviets [sic] the anxiety . . . [and] also relieves [his] depression," and (3) double cell status caused his "phobias [to prevent] him from 'the functions of daily living.'"  (Id. at 6-7, 10.) Plaintiff alleges that Defendant Norum failed "to respond in a reasonable manner to reinstate single cell status" knowing that Plaintiff was receiving Hepatitis C treatment.  (Id., Ex. 4 at 27.)  Plaintiff

alleges that Defendant SVSP Physician Hedrick was told by Defendant Sid, "not to let Plaintiff in the office to see [the] high risk doctor to get his medications renewed." (Opp'n, Part 2 at 40.) Plaintiff further claims that Defendant Gauch failed to inform Defendant Hedrick "of the truth of [Plaintiff's] 10 year history in SVSP." (Id., Part 2 at 27.) Finally, Plaintiff alleges that Defendant CDCR Secretary Rushen "created policies or customs allowing and encouraging illegal acts and was grossly negligent in managing the people she was supposed to supervise." (Id., Part 1 at 13.)

Plaintiff asserts that he exhausted administrative grievance log no. SVSP-A-08-1521 before filing this action. (Compl. at 1-2.) In his initial grievance, Plaintiff claims to "suffer from agoraphobi[a]" and "depression from inability to overcome it." (Id., Ex. 1 at 7.) He specifically requested to "be medically unsigned [sic] from work duty for psych concerns and made ADA [Americans with Disabilities Act]." (Id.) Plaintiff's initial grievance was denied at the informal level because he agreed that he was able to work. (Id.) He appealed the denial to the first level of review. (Id., Ex. 1 at 3.) He explained that he agreed that he was able to work because he was "under the influence of a proper medication (Serax), but Dr. Golstein [sic] said it will be short lived." (Id.)

On April 18, 2008, Plaintiff's first level appeal was denied on the ground that there was "no indication that Mr. TORLUCCI is unable to work and Mr. TORLUCCI agrees that he can work . . . . Furthermore, I/M TORLUCCI was directed to medical for any further issues related to ADA status." (Id.) Plaintiff subsequently appealed to the second level of review on May 9, 2008. (Id., Ex. 1 at 4.) On June 10, 2008, Plaintiff's second level appeal was denied because he was precluded from "designation or inclusion as a class member related to any developmental disability or learning disability" and because he "obviously does not and has not met CDCR ADA criteria for any permanent disability status." (Id., Ex. 4 at 5.) Plaintiff appealed the denial to the Director's Level. In his third level appeal, Plaintiff mentioned the issues involved in this claim, including the fact that he had "single cell status since 2000 for Tourettes [sic] (a social stigma-phobia) causing me victimization by inmates co/workers, as well as specific phobia (fear of public urination & bowel movement) with an over active bladder & ADD/ADHD." (Id., Ex. 4 at 8.) Plaintiff's grievance was ultimately denied at the Director's Level on October 2, 2008. (Id. at 1-2.)

## II.     <u>Procedural Background</u>

Plaintiff filed his initial complaint on August 29, 2008.  Plaintiff filed an amended complaint on September 12, 2008, and a second amended complaint on October 30, 2008.  The October 30, 2008 second amended complaint is the operative pleading before the Court.  Upon reviewing the second amended complaint, the Court determined that Plaintiff had stated two separate Eighth Amendment claims.  First, the Court found Plaintiff stated a cognizable claim of deliberate indifference to his serious medical and mental health needs based on Plaintiff's allegations of "inadequate physical as well as mental health care and the resulting injuries he sustained -- while he was housed [at SVSP] from 2007 to 2008[4] -- state[d] a cognizable deliberate indifference claim . . . ."  (Dec. 8, 2010 Order at 5 (footnote in original).)  Second, the Court found that Plaintiff's placement in a double cell "subjects him to a substantial risk of serious harm state[d] a cognizable claim of deliberate indifference to his safety needs . . . ."  (<u>Id.</u>)  The Court acknowledged that Plaintiff is seeking monetary damages and injunctive relief and that he made a request for a preliminary injunction.  Specifically, the Court noted that Plaintiff seeks "'permanent single cell status for both psychiatric and medical concerns, which pose a life & death situation to Plaintiff when & if double celled or in a dormatory [sic] setting.'"  (<u>Id.</u> at 5.)  The Court ordered service of the pleadings and directed Defendants to respond to Plaintiff's request for a preliminary injunction.  The Court directed the Clerk of the Court to send notices of lawsuits and requests for waivers of service to Defendants Rushen, Gauch, Norum, Hedrick, Diaz, Sid, and Evelsizor.[5]

On February 7, 2011, the waivers of service were returned executed for Defendants Evelsizor, Gauch, Hedrick, and Sid.

On February 11, 2011, Defendants Evelsizor, Gauch, Hedrick, and Sid filed their answer to

---

[4]  The Court narrowed down the time frame of Plaintiff's deliberate indifference claims from 2007 through 2008 based on the following: his suicide attempt was on July 20, 2007; most of the attached 602 appeal forms were submitted in 2007; and his single cell status was revoked in August, 2008 -- immediately before he commenced this suit.

[5]  On January 20, 2011, Defendants Evans, Khan, Roberts, and Wilson were terminated from the current action.  On May 16, 2011, Defendants Clark, Wang, Guajardo, Hill, and Newbarth were also terminated.  As further explained in this Order, the only remaining Defendants in this action are Defendants Rushen, Gauch, Norum, Hedrick, Sid, and Evelsizor.

Plaintiff's complaint as well as their opposition to his motion for a preliminary injunction.

In an Order dated March 22, 2011, the Court indicated that service had been ineffective on Defendant R. Diaz.  Subsequently, the Court explained that because Plaintiff "[did] not know who Defendant Diaz [was] and that he [was] unable to find that Defendant's current address," all claims against Defendant Diaz would be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure within the thirty day deadline.  (Mar. 22, 2011 Order at 2.)  Thereafter, Defendant Diaz was terminated from the current action due to Plaintiff's failure to timely provide Defendant Diaz's current address.  (May 16, 2011 Order at 5.)

On May 12, 2011, Defendants Evelsizor, Gauch, Hedrick, and Sid filed their first motion to dismiss Plaintiff's claims for failure to exhaust administrative remedies (docket no. 94).

On May 17, 2011, notices of lawsuit and requests for waivers of service were again sent to Defendants Norum and Rushen.

On June 1, 2011, the waiver of service was returned executed by Defendant Norum. Defendants Evelsizor, Gauch, Hedrick, Norum, and Sid subsequently filed a second answer to Plaintiff's complaint.

On June 1, 2011, Defendants Evelsizor, Gauch, Hedrick, Norum, and Sid filed a second motion to dismiss as well as a motion for judgment on the pleadings.  Defendants argue that Plaintiff's claims should be dismissed because: (1) they have not been properly exhausted through administrative grievance log no. SVSP-A-08-1521 because Plaintiff attempted to extend the parameters of his grievance by adding language regarding his need to be single-celled, or, in the alternative, (2) they fail to state Eighth Amendment claims for deliberate indifference upon which relief could be granted against all Defendants.

On June 24, 2011, the waiver of service was returned executed by Defendant Rushen.  On June 24, 2011, Defendant Rushen filed a joinder (docket no. 108) to Defendants' motion to dismiss and motion for judgment on the pleadings, submitted all of the arguments presented by those Defendants, and sought to join Defendants' motions instead of filing her own dispositive motion. (Def. Rushen's Mot. of Joinder to Defs.' Mot. to Dismiss and Mot. for J. on the Pleadings at 1-2.)

On June 27, 2011, Defendants Evelsizor, Gauch, Hedrick, Norum, Rushen, and Sid filed a

1    third answer to Plaintiff's complaint.

2         On August 16, 2011, Plaintiff filed a motion for summary judgment (docket no. 120).

3         On August 22, 2001, Plaintiff filed his opposition to Defendants' motion to dismiss and

4    motion for judgment on the pleadings.[6]

5         On September 9, 2011, Defendants filed their reply to Plaintiff's opposition.

6         Also on September 9, 2011, Defendants filed an opposition to Plaintiff's motion for summary

7    judgment.  Plaintiff did not file a timely reply to their opposition, instead on September 11, 2011, he

8    filed a request for a thirty-day extension of time in which to file his reply (docket no. 141).

9                                        **DISCUSSION**

10   **I.     Plaintiff's Injunctive Relief Claims and Pending Motions**

11           **A.     Injunctive Relief Claims and Request for a Preliminary Injunction**

12           As mentioned above, Plaintiff seeks both injunctive relief and money damages.  He also

13   requests for a preliminary injunction in the form of "permanent single cell status" at SVSP.

14           The jurisdiction of the federal courts depends on the existence of a "case or controversy"

15   under Article III of the Constitution.  PUC v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996).  A claim

16   is considered moot if it has lost its character as a present, live controversy, and if no effective relief

17   can be granted; where the question sought to be adjudicated has been mooted by developments

18   subsequent to filing of the complaint, no justiciable controversy is presented.  Flast v. Cohen, 392

19   U.S. 83, 95 (1968).  Where injunctive relief is involved, questions of mootness are determined in

20   light of the present circumstances.  See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996).

21           When an inmate has been transferred to another prison and there is no reasonable expectation

22   nor demonstrated probability that he will again be subjected to the prison conditions from which he

23   seeks injunctive relief, the claim for injunctive relief should be dismissed as moot.  See Dilley v.

24   Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  A claim that the inmate might be re-transferred to the

25   prison where the injury occurred is too speculative to overcome mootness.  Id.

26   _____

27        [6] Plaintiff's opposition, not including the voluminous documentary exhibits attached, is
     eighty-eight pages in length.  Although this number is more than triple the twenty-five-page limit
28   imposed by Civil Local Rule 7-4(b), the Court has granted Plaintiff leave to file an opposition in
     excess of that limit.  (Aug. 25, 2011 Order at 2.)

                                              7

When Plaintiff filed his original complaint, he was incarcerated at SVSP. He alleged unconstitutional conditions of confinement during the period of his confinement at SVSP from 2007 through the date his initial complaint was filed, August 29, 2008. Plaintiff sought injunctive relief to remedy these alleged injuries. On December 21, 2009, he filed a notice of change of address informing the Court he had been transferred to California State Prison - Corcoran, and since then, he has again been transferred to KVSP. Because Plaintiff has not been incarcerated at SVSP since at least December, 2009, to the extent he seeks injunctive relief from the conditions of his confinement at SVSP, those claims are DISMISSED as moot.[7] Similarly, the Court DENIES as moot Plaintiff's request for a preliminary injunction in the form of "permanent single cell status" at SVSP.

The Court will review Defendants' pending dispositive motions relating to Plaintiff's remaining claims for damages below.[8]

**B.    Plaintiff's Motion for Extension of Time to File a Reply**

Plaintiff requests an extension of time to file his reply to Defendants' opposition to his motion for summary judgment. While Plaintiff claims that he has been "adversley [sic] transfered [sic] from Mule Creek to Kern Valley in EOP SNY where he is housed with a known enemie [sic] and is afraid to leave his cell to go to the law library, and fears for his safety," (Pl.'s EOT Req. at 1), he does not specify when he was transferred or how long he has been unable to go to the law library. Plaintiff's request is dated September 11, 2011, and he claims that prison officials at KVSP will not give him his legal property "until he goes to ICC and gets off orientation on Weds. 9/14/11, and then

---

[7] Moreover, should Plaintiff seek to allege that some or all of his claims extend to the conditions of his confinement at Kern Valley State Prison in Delano, California, those claims must be brought in a separate lawsuit in the United States District Court for the Eastern District of California, the proper venue for claims arising in Kern County, where Delano is located. See 28 U.S.C. § 1391(b); 28 U.S.C. § 84(b).

[8] In their dispositive motion, Defendants argue that Plaintiff's injunctive relief claims are barred by three pending class action lawsuits: Coleman v. Schwarzenegger, et al., No. S 90-0520 LKK-JFM (E.D. Cal.) (consisting of "all inmates with serious mental disorders who are now, or who will in the future, be confined with the California Department of Corrections"); Armstrong v. Davis, et al., No. C 94-2307 CW (N.D. Cal.) (consisting of inmates whose mental and physical disabilities have not been accommodated by CDCR and the Board of Parole Hearings pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act); and Plata v. Schwarzenegger, No. C-01-1351 T.E.H. (N.D. Cal.) (including in its ambit all California state prisoners with serious medical needs and conditions). Because the Court has dismissed Plaintiff's injunctive relief claims as moot, it need not address Defendants' aforementioned argument.

1    it will take about 2 weeks for him to receive his property, if lucky."  (Id. at 2.)

2         The Court notes that Plaintiff's motion for summary judgment is only one-page long.  It

3    primarily consists of three conclusory statements indicating that summary judgment should be

4    granted in his favor.  (Pl.'s Mot. for Summ. J. at 1.)  Plaintiff's reply was due on September 22, 2011.

5    The Court also points out that Plaintiff has had ample opportunity to oppose Defendants' pending

6    motion to dismiss and motion for judgment on the pleadings.  Plaintiff has filed an eighty-eight-page

7    opposition, and he has attached seventy-three pages of exhibits.  Accordingly, Plaintiff's request for

8    an extension of time to file his reply (docket no. 141) is DENIED.

9         **C.**    **Plaintiff's Motion for Summary Judgment**

10        Plaintiff's motion for summary judgment consists of a one-page submission with conclusory

11    statements in which he argues that,

> 12    "because everyone agrees the prison(s) are following a particular policy (such as
> 13    not prescribing benzodiazapines (Serax) & narcotics (Tylenol 3 & Methadone) and
> not giving single cell status to Plaintiff unless he kills a cellie.  And the only
> 14    question for the court is whether these policies are illegal.  Psych-Norum taking
> Plaintiffs (high risk) medical Serax from him is no doubt illegal.  Since the facts are
> 15    agreed on the judge should grant Plaintiff summary judgment."

16 (Pl.'s Mot. for Summ. J. at 1.)

17        Plaintiff's one-page motion is devoid of any substantive arguments or supporting evidence,

18    leaving Defendants unclear on what factual or legal bases he moves for summary judgment.

19    Because these assertions are insufficient to create a material issue of fact, and because Plaintiff has

20    not introduced any evidence supporting his claims that Defendants violated his constitutional rights,

21    the Court finds that he has failed to meet his initial burden on summary judgment.  Moreover, the

22    Court notes that Defendants' motion to dismiss and motion for judgment on the pleadings were

23    pending at the time his motion was filed, and, as mentioned above, Plaintiff has filed a lengthy

24    opposition to their dispositive motions.  Accordingly, Plaintiff's motion for summary judgment

25    (docket no. 120) is DENIED.

26 **II.**    **Defendants' Motion for Judgment on the Pleadings**

27        **A.**      **Standard of Review**

28        A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the

1    pleadings are closed, but within such time so as not to delay trial.  Fed. R. Civ. P. 12(c).  The

2    standard applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b)

3    motion to dismiss for failure to state a claim.  Judgment on the pleadings is appropriate when, even

4    if all material facts in the pleading are accepted as true, the moving party is entitled to judgment as a

5    matter of law.  Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993).  For

6    purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while

7    the allegations of the moving party which have been denied are assumed to be false."  Hal Roach

8    Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  However, a court need

9    not automatically accept as true unreasonable inferences, unwarranted deductions of fact, or

10   conclusory legal allegations cast in the form of factual allegations.  See Western Mining Council v.

11   Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Although a court is generally confined to the allegations in

12   the pleadings on a Rule 12(c) motion, a court may also consider documents whose contents are

13   alleged in a complaint and whose authenticity no party questions.  See e.g., Fecht v. Price Co., 70

14   F.3d 1078, 1080 (9th Cir. 1995) ("Such consideration does 'not convert the motion to dismiss into a

15   motion for summary judgment.'").

16          **B.      Deliberate Indifference**

17          Plaintiff alleges that Defendants Evelsizor, Gauch, Hedrick Norum, Rushen, and Sid are

18   liable for acting with deliberate indifference to his serious medical needs and safety needs as well as

19   for the alleged resulting injuries he sustained while housed at SVSP from 2007 to 2008.  (Compl. at

20   5, 19.)  Specifically, Plaintiff alleges that these Defendants allowed him to be placed in double cell

21   status, which subjected him to a substantial risk of harm.  Plaintiff claims that Defendants' inability

22   to properly act upon being notified of his suicidal tendencies "meets the standard for Eighth

23   Amendment purposes . . . ."  (Id. at 6.)  Finally, Plaintiff argues that Defendants "knew of prisoner's

24   condition and acted with deliberate indifference in failing to inform chairperson B. Hedrick of the

25   history of the truth of prisoner's 10 year history in SVSP."  (Id. at 9.)

26          **1.      Applicable Law**

27          **a.      Serious Medical Needs**

28   Deliberate indifference to serious medical needs violates the Eighth Amendment's

10

1   prohibition against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976);

2   McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX

3   Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The analysis of a claim

4   of "deliberate indifference" to serious medical needs involves an examination of two elements:

5   (1) the existence of a prisoner's serious medical needs and (2) the establishment of a deliberately

6   indifferent response by the defendants to those needs.  McGuckin, 974 F.2d at 1059.

7          A serious medical need exists if the failure to treat a prisoner's condition could result in

8   further significant injury or the "wanton infliction of unnecessary pain."  Id. (citing Estelle, 429 U.S.

9   at 104).  The existence of an injury that a reasonable doctor or patient would find important and

10  worthy of comment or treatment; the presence of a medical condition that significantly affects an

11  individual's daily activities; or the existence of chronic and substantial pain are examples of

12  indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60 (citing Wood v.

13  Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

14         A prison official is deliberately indifferent if he or she knows that a prisoner faces a

15  substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

16  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts

17  from which the inference could be drawn that a substantial risk of serious harm exists," but he "must

18  also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not,

19  then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v.

20  County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

21         In order for deliberate indifference to be established, therefore, there must be a purposeful act

22  or failure to act on the part of the defendant and a resulting harm.  See McGuckin, 974 F.2d at 1060;

23  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Such

24  indifference may appear when prison officials deny, delay or intentionally interfere with medical

25  treatment, or it may be shown in the way in which prison officials provide medical care.  See

26  McGuckin, 974 F.2d at 1062.

27         "A difference of opinion between a prisoner-patient and prison medical authorities regarding

28  treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference.  See Franklin, 662 F.2d at 1344 (9th Cir. 1981); see also Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

### b.   Safety Needs

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates.  See Farmer, 511 U.S. at 834.  A prison official violates the Eighth Amendment only when two requirements are met:  (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety.  See id.

To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety.  See id. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  See id.

When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  Leer explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages."  Id.  In the former case, a broader and more generalized approach to causation is taken.  See id.

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined.  We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference.  In order to resolve this causation

issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

Id. at 633-34 (citations omitted).

### 2. Analysis

Plaintiff argues that, given the treatment he was receiving for Hepatitis C, single cell status was necessary; therefore, Defendants were deliberately indifferent to his serious medical and mental health needs as well as his safety needs by assigning him double cell status. (Compl. at 5, 8, 19.)

Defendants contend that Plaintiff has failed to state a claim under § 1983 against Defendants for deliberate indifference to his health and safety needs in violation of the Eighth Amendment. Defendants assert that Plaintiff has not demonstrated that his double cell status was medically unacceptable or caused mental or emotional injury, pointing out that Plaintiff's fear of being double-celled does not amount to an Eighth Amendment violation. (Mot. to Dismiss and Mot. For Summ. J. at 17.) Defendants also contend that a mere difference of medical opinion between Plaintiff and Defendants regarding his mental health status does not demonstrate that Defendants were deliberately indifferent by acting in conscious disregard to an excessive risk to Plaintiff's health. (Id. (citing Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344).) Defendants argue that even if all material facts in the pleading are accepted as true, judgment must be entered in their favor because Plaintiff fails to demonstrate that the treatment he received mandated single cell status, that his fear of being double-celled was an injury that amounted to an Eighth Amendment violation, and that Defendants were deliberately indifferent in their administration of medication and authorization of his double cell status.

### a. Necessity

Plaintiff argues that he should necessarily have single cell status because he is a Correctional Clinical Case Management System inmate with Hepatitis C. (Compl. at 15.)

As a general rule, all inmates are required to share a cell, and that "[i]nmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice." Cal. Code Regs. tit. 15, § 3269(d). Single cell status may be appropriate for inmates who demonstrate a history

13

of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate.  Id.  In addition, single cell status may be approved if recommended by clinical staff due to mental health or medical concerns.  Id. § 3269(f).

Plaintiff's claim that he is entitled to a single cell fails because there is nothing to suggest that his condition automatically necessitates single cell status.  The Court need not decide whether Defendants chose to have Plaintiff assigned to double cell status in conscious disregard of an excessive risk to his health.  Plaintiff has not demonstrated that his double cell status is medically unacceptable given his Hepatitis C treatment.  See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.  Because Plaintiff has not only failed to demonstrate that Hepatitis C necessitates single cell status, but has also failed to show that double cell status is medically unacceptable given his condition, Plaintiff cannot argue that he faced a substantial risk of serious harm or that Defendants were deliberately indifferent by failing to grant him single cell status.  See Farmer, 511 U.S. at 837.

**b.    Injury**

Plaintiff argues that he cannot have a cellmate because of "psychiatric & medical concerns, which pose a life & death situation to Plaintiff when & if double celled or in a dormatory [sic] setting."  (Compl. at 3.)  Also, if Plaintiff "does not refuse a cellie," he claims that "he will surely risk injury to himself or his cellie by his actions &/or his cellie will injury [sic] him."  (Id. at 26.)

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(a).  Plaintiff must plead an actual physical injury within the meaning of the Prison Litigation Reform Act of 1995 in order to recover damages for mental or emotional damages.

Here, Plaintiff has failed to show that he suffered any injury as a result of being double-celled.  Plaintiff's July 20, 2007 suicide attempt took place while he was single-celled -- specifically, eight months before he was prescribed Serax, and more than a year before he began his Hepatitis C treatment and was assigned to a double cell.  Moreover, Plaintiff's fear of double-celling is insufficient to satisfy the Eighth Amendment deliberate indifference standard.  Babcock v. White,

1   102 F.3d 267, 270 (7th Cir. 1996).  In <u>Babcock</u>, the Seventh Circuit assessed whether an inmate

2   "who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless

3   maintain a <u>Bivens</u> claim for money damages based solely on prison officials' past failure to take

4   measure to protect the prisoner."  <u>Id.</u>  The Court concluded that "it is the reasonably preventable

5   assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth

6   Amendment."  <u>Id.</u> at 272.  Here, Plaintiff has only shown a fear of injury to himself or a cellmate,

7   not a reasonably preventable injury that he has, in fact, suffered.  Plaintiff has not claimed any other

8   specific injuries after his Serax prescription was terminated, after his Hepatitis C treatment began, or

9   after he was placed in a double cell.

10       Plaintiff's conclusory statements and fears of being double-celled, therefore, fail to show that

11   he suffered a cognizable injury as a result of the August 2008 double cell assignment.  Because the

12   Eighth Amendment does not consider Plaintiff's fear a cognizable injury, he does not state a claim of

13   deliberate indifference to his health and safety needs against Defendants.

14                   **c.       <u>Deliberate Indifference</u>**

15       Finally, Plaintiff fails to show that Defendants fulfilled the subjective prong of the Eighth

16   Amendment deliberate indifference test.

17       As explained above, a prison official is only liable if the official "knows of and disregards an

18   excessive risk to inmate health or safety; the official must both be aware of facts from which the

19   inference could be drawn that a substantial risk of serious harm exists, and he must draw the

20   inference."  <u>Farmer</u>, 511 U.S. at 835.

21                   **(1)      <u>Defendant Rushen</u>**

22       Plaintiff alleges that Defendant Rushen "was the Director[9] of CDCR when he initiated his

23   lawsuit" and argues that she "can be sued even if she did not personally abuse Plaintiff because she

24   created or enforced the policies that violated Plaintiff's rights and was grossly negligent in

25   overseeing the people who violated those rights."  (Pl.'s Opp'n, Part 1 at 13.)  However, Matthew

26   Cate was appointed Secretary of the CDCR on May 16, 2008.  (Defs.' Reply at 7.)  Defendant

27

28          [9]  Plaintiff uses the term "Director of CDCR" to refer to the head of the CDCR; however, the
     correct terminology is the "Secretary of the CDCR."

1   Rushen, therefore, could not have been Secretary of the CDCR at the time Plaintiff filed his

2   complaint on August 29, 2008.  Defendant Rushen therefore cannot be linked to the alleged

3   constitutional violations.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

4        Moreover, assuming arguendo that Defendant Rushen was the Secretary of the CDCR at the

5   relevant time period, Plaintiff does not allege sufficient facts to establish liability with respect to her.

6   Liability may be imposed on an individual defendant under § 1983 only if the plaintiff can show that

7   the defendant proximately caused the deprivation of a federally protected right.  See Leer, 844 F.2d

8   at 634.  A person deprives another of a constitutional right within the meaning of § 1983 if he does

9   an affirmative act, participates in another's affirmative act or omits to perform an act which he is

10  legally required to do, that causes the deprivation of which the plaintiff complains.  Id. at 633.  If the

11  alleged defendant is being sued in his supervisory capacity, the plaintiff must allege facts from

12  which it could be established that the defendant was involved personally in the alleged constitutional

13  violation, or that there was a sufficient causal connection between wrongful conduct by the

14  defendant and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446

15  (9th Cir. 1991) (en banc).  As mentioned above, sweeping conclusory allegations will not suffice;

16  the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of

17  protected rights.  Leer, 844 F.2d at 634.  Plaintiff merely claims that Defendant Rushen is liable for

18  the acts of her subordinates, which is simply not enough for Defendant Rushen to be held liable as a

19  supervisor.

20       Plaintiff has not provided sufficient factual allegations upon which to impose liability on

21  Defendant Rushen for her deliberate indifference to Plaintiff's serious medical and mental health

22  needs as well as his safety needs.  Therefore, Plaintiff is unable to state an Eighth Amendment claim

23  against Defendant Rushen.

24                    **(2)** **Defendant Hedrick**

25       Plaintiff's sole reference to Defendant SVSP Physician Hedrick in his complaint is that

26  Defendant Gauch "acted with deliberate indifference in failing to inform [Defendant] Hedrick of the

27  history of the truth of [Plaintiff's] 10 year history in SVSP."  (Compl. at 27.)  Plaintiff provides no

28  factual allegations that Defendant Hedrick was personally involved, responsible for, or failed to act

16

1 | in regard to Plaintiff's double-celling. Plaintiff neither provides factual allegations that Defendant

2 | Hedrick's duty as a prison official involved supervising or providing care for Plaintiff's medical

3 | treatment.

4 |     Bare allegations such as these are insufficient to establish that Defendant Hedrick knew of

5 | and disregarded an excessive risk to Plaintiff's health and safety. <u>Ivey v. Bd. of Regents</u>, 673 F.2d

6 | 266, 268 (9th Cir. 1982). In addition, Defendant Hedrick cannot be held liable for deliberate

7 | indifference in a supervisory capacity because Plaintiff is unable to demonstrate how Defendant

8 | Hedrick was personally involved in any of the alleged constitutional violations. <u>Redman</u>, 942 F.2d

9 | at 1446. Therefore, Plaintiff fails to state an Eighth Amendment claim of deliberate indifference

10 | against Defendant Hedrick.

11 |     **(3)     <u>Defendant Gauch</u>**

12 |     Plaintiff alleges that Defendant Gauch -- the Senior Psychologist at SVSP during the relevant

13 | time period -- signed a form on August 21, 2008 stating that Plaintiff's "mental health status is

14 | appropriate for double cell housing at this time." (Compl., Ex. 4 at 23.) Though Plaintiff may

15 | disagree with Defendant Gauch regarding his cell assignment, a mere difference of medical opinion

16 | does not establish deliberate indifference. <u>Sanchez</u>, 891 F.2d at 242. In order to demonstrate that

17 | Defendant Gauch was deliberately indifferent, Plaintiff must show that "the course of treatment the

18 | doctors chose was medically unacceptable under the circumstances" and was chosen "in conscious

19 | disregard of an excessive risk to [the inmate's] health." <u>Jackson</u>, 90 F.3d at 332.

20 |     Defendant Gauch properly exercised her discretion when she approved Plaintiff for double

21 | cell status on August 21, 2008 -- one week prior to the execution of his Hepatitis C treatment

22 | contract. Plaintiff has provided no factual allegations to establish that, because he suffers Hepatitis

23 | C, he necessarily should have been assigned single cell status. Plaintiff's self-expressed fears of

24 | sharing a cell do not rise to the level of proving there was a medical necessity for Plaintiff to be

25 | given single cell status. Additionally, while Defendant Gauch's double cell status approval did come

26 | after Dr. Scherer's Progress Note regarding the Hepatitis C treatment regime, it nevertheless came

27 | one week prior to the August 28, 2008 execution of Plaintiff's actual contract for the Hepatitis C

28 | treatment regime. Plaintiff fails to prove that Defendant Gauch's recommendation was medically

1   unacceptable and chosen in conscious disregard of an excessive risk to Plaintiff's health.  See id.

2   Assuming these bare and conclusory allegations are true, Plaintiff fails to prove that

3   Defendant Gauch was deliberately indifferent to Plaintiff's health and safety needs.  Therefore,

4   Plaintiff cannot state an Eighth Amendment claim against Defendant Gauch.

5   **(4)   Defendant Norum**

6   Plaintiff alleges that Defendant SVSP Psychiatrist Norum was Defendant Gauch's "cohort"

7   and "partner in crime" and violated Plaintiff's Eighth Amendment rights when Defendant Norum

8   "cleared Plaintiff for Hep[atitis] C treatment under false pretenses and a breach of contract" and

9   failed to "respond in a reasonable manner to reinstate [Plaintiff's] single cell status."  (Compl. at 16,

10  27.)  The forms Defendant Norum allegedly signed are dated March 26, 2008 and April 16, 2008.

11  (Id., Ex. 4 at 16-17, 23.)  Defendant Norum signed the alleged forms four and five months before

12  Plaintiff was assigned to double cell status.  Defendant Norum, therefore, could not have known

13  about Plaintiff's alleged health and safety concerns regarding double cell status at the time he

14  psychiatrically cleared Plaintiff for Hepatitis C treatment.  However, assuming that Defendant

15  Norum had known about Plaintiff's alleged health and safety concerns regarding double cell status,

16  Plaintiff still cannot demonstrate that Defendant Norum was deliberately indifferent to his health or

17  safety needs.  To the extent that Plaintiff disagrees with any psychiatric or clinical determination

18  made by Defendant Norum regarding Plaintiff's mental health status or treatment, a mere difference

19  of medical opinion does not establish deliberate indifference.  Sanchez, 891 F.2d at 242.

20  In his opposition, Plaintiff attempted to introduce a declaration by Defendant Norum.  (Pl.'s

21  Opp'n, Part 3 at 10-15.)  An exhibit such as this cannot be considered because it was not contained in

22  the complaint.  Levine v. Diamanthuset, Inc., 950 F.3d 1478, 1482 (9th Cir. 1991) (citing North Star

23  Int'l v. Arizona Corp. Com'n, 720 F.2d 578, 581 (9th Cir. 1983)).  Even if it could have been

24  considered, the declaration was executed on August 27, 2009 -- more than a year after Plaintiff filed

25  his complaint -- and therefore fails to link Defendant Norum to the alleged constitutional violations.

26  In fact, Defendant Norum's declaration confirms prison officials' concern for Plaintiff's well-being

27  and their ongoing efforts to treat Plaintiff.  (Pl.'s Opp'n, Part 3 at 13.)  Defendant Norum's

28  declaration states that Plaintiff "has responded very well to his current medication regime" and does

1   not suggest that single cell status is necessary for the effective treatment of Plaintiff's condition.

2   (Id.)

3         Lastly, Plaintiff's claim against Defendant Norum could be construed as based on

4   supervisory liability.  However, because Plaintiff cannot show the personal involvement necessary to

5   establish a § 1983 claim, Plaintiff is unable to establish a link between Defendant Norum's allegedly

6   wrongful conduct and the alleged constitutional violations.  Taylor v. List, 880 F.2d 1040, 1045 (9th

7   Cir. 1989).

8         Based on these conclusory allegations, Plaintiff cannot demonstrate that Defendant Norum

9   was deliberately indifferent to Plaintiff's health and safety needs, and therefore fails state an Eighth

10  Amendment claim against Defendant Norum.

11                    **(5)**      **Defendants Sid and Evelsizor**

12        Plaintiff names Defendants SVSP Physician Sid and SVSP Registered Nurse Evelsizor in the

13  caption of his complaint.  (Compl. at 1.)  However, Plaintiff presents no factual allegations in the

14  body of his complaint to show that either Defendants Sid or Evelsizor were involved in any of his

15  alleged constitutional violations.

16        In his opposition, Plaintiff argues that Defendants Sid and Evelsizor "interfered with

17  Plaintiff's (high risk) medical treatment directly" and that Defendants Norum, Gauch, Sid, and

18  Evelsizor "failed to respond to numerous complaints to physical pain and mental anguish which

19  never goes away without proper medication, Serax, Tylenol-3 & Methadone, along with Ibuprofen

20  & Tylenol."  (Opp'n, Part 1 at 48, Part 2 at 42.)  Plaintiff did not include these allegations in his

21  complaint.  However, even if Plaintiff had included them in his complaint, these bare allegations are

22  insufficient to assert a particularized injury that gives rise to an Eighth Amendment claim.  Ivey, 673

23  F.2d at 268.

24        Moreover, even if the Court had given Plaintiff leave to amend his complaint regarding

25  Defendants Sid and Evelsizor, he would still be unable to state a claim against these Defendants for

26  the same reasons Plaintiff is unable to claim that Defendants Gauch and Norum were deliberately

27  indifferent to his health and safety needs.  Plaintiff asserts that Defendant Gauch was deliberately

28  indifferent because he approved Plaintiff's assignment to double cell status.  (Compl., Ex. 4 at 23.)

1   Plaintiff also claims that Defendant Norum was deliberately indifferent in clearing him for Hepatitis

2   C treatment and failing to reinstate single cell status.  (Id. at 16, 27.)  These decisions, however,

3   were not medically unacceptable because Plaintiff fails to establish that Defendants Gauch's and

4   Norum's choice of treatment was chosen in conscious disregard to an excessive risk to Plaintiff's

5   health.  See Toguchi, 391 F.3d at 1058.  At most, Plaintiff's preference is merely a difference of

6   medical opinion that does not establish deliberate indifference.  See Sanchez, 891 F.3d at 242.

7   Similarly, Defendants Sid and Evelsizor could not have been deliberately indifferent to

8   Plaintiff's health and safety needs in choosing a method of medical treatment that Plaintiff did not

9   prefer.  Plaintiff would be unable demonstrate that the "Serax, Tylenol-3 & Methadone, along with

10   Ibuprofen & Tylenol," (Opp'n, Part 2 at 42), was a medically necessary method of treatment for his

11   condition.  Therefore, because a mere difference of medical opinion does not establish deliberate

12   indifference, Plaintiff would have been unable to demonstrate that these Defendants made a choice

13   in treatment that was medically unacceptable under the circumstances.  See Sanchez, 891 F.2d at

14   242 See Toguchi, 391 F.3d at 1058.  Therefore, Plaintiff would be unable to state a claim against

15   Defendants Sid and Evelsizor even if the Court had granted Plaintiff leave to amend his complaint.

16   Notwithstanding, because review is limited to the contents of the complaint, Plaintiff's

17   allegations in his complaint, even if taken as true, are insufficient and fail to establish deliberate

18   indifference for an Eighth Amendment claim against Defendants Sid and Evelsizor.

19   **3.    Conclusion**

20   In sum, Plaintiff's allegations in his operative complaint, even if taken as true, are insufficient

21   and fail to establish deliberate indifference to his health and safety needs to amount to an Eighth

22   Amendment claim against all the aforementioned Defendants.  Therefore, Defendants' motion for

23   judgment on the pleadings is GRANTED.  Accordingly, Plaintiff's claims are DISMISSED without

24   prejudice.  In light of this dismissal, the Court need not address Defendants' alternative argument

25   that Plaintiff did not exhaust his required administrative remedies.  Therefore, Defendants' pending

26   dispositive motions which raise such an argument are DENIED as moot.

27   **CONCLUSION**

28   For the foregoing reasons, the Court orders as follows:

1.     Plaintiff's claims for injunctive relief are DISMISSED as moot.  The Court also DENIES as moot Plaintiff's request for a preliminary injunction in the form of "permanent single cell status" at SVSP.

2.     Plaintiff's motion for an extension of time to file his reply to Defendants' opposition to his motion for summary judgment (docket no. 141) is DENIED.

3.     Plaintiff's motion for summary judgment (docket no. 120) is DENIED.

4.     Defendants' motion for judgment on the pleadings (docket no. 105) is GRANTED.  In addition, Defendant Rushen's motion for judgment on the pleadings by way of joinder (docket no. 108) is GRANTED.  Therefore, Plaintiff's Eighth Amendment claims (for monetary damages) are DISMISSED without prejudice.  Because the Court has granted Defendants' motion for judgment on the pleadings, it need not address Defendants' alternative argument in their remaining motions to dismiss (docket nos. 94, 105); therefore, those motions are DENIED as moot.

5.     The Court has rendered its final decision on this matter; therefore, this Order TERMINATES Plaintiff's case.  The Clerk of the Court shall terminate all remaining pending motions as moot and close the file.

6.     This Order terminates Docket nos. 94, 105, 108, 120, and 141.

IT IS SO ORDERED.

DATED: September 30, 2011

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

1

2

3

4

5

6   UNITED STATES DISTRICT COURT
    FOR THE
7   NORTHERN DISTRICT OF CALIFORNIA

8   ARTHUR TORLUCCI,
                                            Case Number: CV08-04124 SBA
9              Plaintiff,
                                            **CERTIFICATE OF SERVICE**
10     v.

11  M S EVANS et al,

12             Defendant.
    ────────────────────────────────/
13

14  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.
15
    That on October 13, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
16  copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
17  located in the Clerk's office.

18

19  Arthur  Torlucci K-33910
20  Kern Valley State Prison
    P.O. Box 6000
21  3000 W. Cecil Avenue
    Delano,  CA 93216
22

23  Dated: October 13, 2011

24                                          Richard W. Wieking, Clerk
                                            By: LISA R CLARK, Deputy Clerk
25

26

27

28